IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cedric Davis, #314208, ) | |
| ) | Civil Action No. 5:11-2256-TMC-KDW |
| Petitioner, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Warden Anthony Padula, Lee Correctional ) | |
| Institution, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, Cedric Davis ("Petitioner" or "Davis"), a state prisoner, filed this petition for a writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 20, 21. Petitioner filed a response in opposition to Respondent's motion. ECF No. 30. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that **Respondent's Motion for Summary Judgment, ECF No. 20, be granted.**

I. Factual Background

Petitioner was indicted in July 2004 for one count of Attempted Armed Robbery, two counts of Armed Robbery, and eight counts of Kidnapping. ECF No. 21 at 1. Petitioner was subsequently indicted in March 2005 for one count of Armed Robbery and six counts of Kidnapping. *Id.* In June 2004, Jason Chehoski,[1] an attorney with the Richland County Public Defender's Office, was assigned to represent Petitioner. App. 4.[2] In January 2005, Petitioner

---
[1] Although Attorney Chehoski's last name is spelled "Chehosky" in the Appendix and in Respondent's Return and Motion for Summary Judgment, the South Carolina Bar's Directory lists the spelling of his last name as "Chehoski."
[2] Citations to "App." Refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina, which is available at ECF Nos. 21-1, 21-2,

filed a Motion For Appointment of Private Counsel requesting that Jason Chehoski be removed as counsel and replaced with a private attorney. ECF No. 21-5. Prior to a ruling on that Motion, Mr. Chehoski left the Public Defender's office and LaNelle Durant was assigned to Petitioner's case. App. 4-6. In December 2004, Petitioner filed a Motion to Relieve Attorney Durant because he did not believe that Ms. Durant was familiar with his case or had sufficient trial experience. App. 5-12. On March 23, 2005, Judge Reginald I. Lloyd granted Petitioner's motion and explained to Petitioner that he would be going to trial without counsel. App. 13.

Steven Hisker was subsequently appointed to represent Petitioner. Petitioner and Mr. Hisker filed a joint motion to relieve counsel that was heard by Judge Lloyd on December 21, 2005. App. 16-18. During the hearing, Mr. Hisker informed the court that the attorney/client relationship between him and Petitioner had deteriorated to the point that he could no longer effectively represent Petitioner. App. 18. Petitioner agreed with Mr. Hisker's request and stated that Mr. Hisker was not representing him to the best of his ability. App. 19. Judge Lloyd granted the motion to relive counsel but informed Petitioner that he would only be appointed one more attorney. *Id.* Judge Lloyd explained that if Petitioner was not able to get along with the new attorney, then Petitioner would have to try his own case. App. 20, 22. The court appointed Chris Hart to represent Petitioner. Mr. Hart filed a motion in February 2006 requesting that he be relieved as counsel on the grounds that such differences existed that he was unable to continue with effective representation of Petitioner. App. 26. Mr. Hart's motion was heard by Judge James W. Johnson, Jr., and during the hearing Mr. Hart reiterated the difficulties he had with communicating with Petitioner. App. 26-28. When Petitioner was questioned by Judge Johnson

---

21-3, 21-4 in this habeas matter. Page number references are to the pages as numbered in the Appendix.

concerning Mr. Hart's motion, Petitioner requested that the court grant Mr. Hart's motion, stating that Mr. Hart did not want to talk about Petitioner's case, but instead wanted to discuss Petitioner's former attorney. App. 28-29. In granting Mr. Hart's motion, the court noted that the Petitioner had been appointed a number of attorneys and had been given a number of opportunities to cooperate with counsel. App. 30-31. Judge Johnson relieved Mr. Hart from representing Petitioner and informed Petitioner that he had elected to represent himself. App. 30. The court appointed an attorney to sit with Petitioner at counsel's table and to be available to answer questions. *Id.* When Petitioner questioned the court's finding that he elected to represent himself, Judge Johnson noted that Petitioner had not cooperated with any of his previously appointed attorneys, and had been warned that he would have to proceed pro se if he failed to cooperate with his final attorney. App. 31.

On March 6, 2006, Petitioner appeared pro se at his guilty plea hearing. App. 34. Attorney Kana Johnson was present as shadow counsel during the guilty plea. *Id.* Judge Johnson accepted Petitioner's guilty plea(s) and sentenced Petitioner to confinement for a period of 30 years to be served concurrently on all charges except for the charge of Attempted Armed Robbery, for which Petitioner was sentenced to confinement for a period of 5 years consecutive to all other charges. App. 68, 70. Petitioner did not appeal his convictions or sentences.

II. Procedural History

Petitioner filed an application for post-conviction relief (PCR) on May 8, 2006 alleging a violation of his "constitutional rights 6th and 14th Amendments." App. 71-77, 73. Respondent made its Return on or about December 29, 2006. App. 78-81. An evidentiary hearing into the matter was convened on January 13, 2009 before the Honorable Alison Rene Lee. App. 192-

256. Petitioner was present at the hearing and was represented by Tara Dawn Shurling, Esquire. *Id.* Assistant Attorney General Brian T. Petrano, of the South Carolina Attorney General's Office, represented Respondent. *Id.* The PCR court dismissed Petitioner's PCR application in a March 10, 2010 order. App. 261-68. In the Order of Dismissal, the PCR court noted that it had the opportunity to review the record in its entirety and hear the testimony and arguments presented at the PCR hearing. App. 263. The Order stated that the PCR court further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility, and to weigh the testimony accordingly. *Id.* The PCR court issued the following findings of fact and conclusions of law pursuant to S.C. Code Ann. § 17-27-80 (2003):

> This Court finds that the testimony of the Applicant was not credible when claiming he was not aware of and/or not advised of the dangers of self-representation. This Court finds the testimony of the Applicant's stand-by counsel, Kana Johnson and the Assistant Solicitor, Margaret Fent, to be credible. In addition, the transcripts of the hearings during which Applicant's counsel were relieved reflect the discussions with the Applicant about his right to counsel, the need to cooperate with his appointed counsel, the delay tactics, the combative attitude, and the reasoning of the court in deciding to relieve counsel.
>
> Kana Johnson testified that Applicant was frustrated and angry during their interaction and did not react well to the information presented by the State. The Applicant understood the nature of the charges against him, the possible penalty, and his 5th Amendment right to remain silent. He appeared to be competent and articulate. She had planned to explain to the Applicant the procedure for trial and about presentation of evidence. He was fearful about representing himself. Johnson could not testify as to whether Davis was informed of the dangers of self-representation because she did not become involved in the case until after the Court decided the Applicant would have no further counsel appointed.
>
> Margaret Fent testified that she discussed plea offers with Steve Hisker, and that she had discussions with the Applicant on the day of the plea. These conversations are reflected in the plea transcript. Ms. Fent testified that she could not recall the specific date, if at all, any hearing on the dangers of self-representation was held.

A defendant may waive his Sixth Amendment right to counsel. See Ex parte Jackson, 381 S.C. 253, 672 S.E.2d 585 (Ct. App. 2009). The accused must be advised of his right to counsel and adequately warned of the dangers of self-representation. State v. McLauren, 349 S.C. 488, 563 S.E.2d (Ct. App. 2002). It is the responsibility of the Court to determine whether there is a knowing and intelligent waiver by the defendant. Id. "A specific inquiry by the trial court expressly addressing the disadvantages of appearing *pro se* is preferred." Ex parte Jackson, 381 S.C. 253, 260, 672 S.E.2d 585, 588 (Ct. App. 2009)(emphasis supplied). However, if the Court fails to address the disadvantages, the record can be examined to determine whether the defendant had sufficient background or was apprised of his rights by some other source. Id., citing McLauren, 349 S.C. 488, 563 S.E.2d 346 (Ct. App. 2002). "[W]hen determining whether the accused knowingly and voluntarily waived his right to counsel the 'ultimate test is not the trial judge's advice but rather the defendant's understanding.'" Ex parte Jackson, supra, 381 S.C. at 260, 672 S.E.2d at 588 (Ct. App. 2009) citing State v. Thompson, 355 S.C. 255, 584 S.E.2d 131 (Ct. App. 2003). "If the record demonstrates the defendant's decision to represent himself was made with an understanding of the risks of self-representation, the requirements of a voluntary waiver will be satisfied." State v. Thompson, 355 S.C. at 263, 584 S.E.2d at 135 (Ct. App. 2003).

> [The Fourth Circuit Court of Appeals has] indicated that "at a minimum the district court should, before permitting an accused to waive his right to counsel, explain the charges and the possible punishments..." Aiken v. United States, 296 F.2d 604, 607 (4th Cir. 1961). The district judges also should "develop on the record the educational background, age and general capabilities of an accused, so that the ability of an accused to grasp, understand and decide is fully known" to the trial court and fully disclosed on the record.

United States v. Gallop, 838 F.2d 105, 110 (4th Cir. 1988).

Our Fourth Circuit Court of Appeals had addressed a case that was, in this Court's mind, factually similar. In Gallop, the defendant had two appointed attorneys relieved and moved that the third attorney be relieved as well. "The district judge properly noted his concern that the defendant was trying to obstruct the orderly procedure of the court. The defendant was also adamant in his rejection of [his third appointed counsel]." The district court determined that this amounted to a waiver of his right to counsel and that he must proceed *pro se*. On appeal the Fourth Circuit Court of Appeals affirmed the waiver, stating "[i]n determining the sufficiency of the waiver the court should be entitled to take into account not only the countervailing advantage in proceeding on schedule, [citation omitted] but also the defendant's insistence that he not be represented by particular counsel."

838 F.2d at 111. The Court in Gallop went on to state that a "defendant cannot be allowed to continue the practice, with little or no apparent reason, of hiring and firing attorneys." Id. The Court recognized in the same case that a defendant who was adamant that they could not go to trial with the appointed attorney should not be forced to cooperate with the appointed counsel. The Court went on to outline the remedy in such a case, stating that "the proper procedure, though not necessarily the exclusive one, is to order the defendant . . . to proceed *pro se* but also to order the appointed counsel to remain as a backup." Id.

> We believe that there must be some limit to the defendant's ability to manipulate the judicial system even if he is unknowing and unintelligent. While a knowing, intelligent, and voluntary waiver of counsel generally is required before a defendant is allowed to proceed *pro se*, where a district judge finds, as was done implicitly in the instant case, that the defendant may reject every counsel for the purposes of delaying the trial, the court must be allowed to impose restraints. Therefore, even if the district court had failed to inquire into the knowingness and intelligence of the defendant's waiver, we find that it was not a reversible error, given that generally adequate assistance of counsel was guaranteed.

Id., at 110-111.

In this case, The Applicant was 23 years old at the time of the plea. He appeared intelligent and was articulate. He was able to understand all of the court proceedings he attended. He had the ability to cooperate with any attorney who represented him as shown by his interaction with Ms. Johnson and his PCR attorney, Ms. Shurling. His charges were as enumerated above and he was aware that he could face life in prison without parole. He had a prior conviction in Florida for aggravated robbery for which he was on probation at the time of the present offenses. More than one of the Applicant's attorneys was able to discuss the discovery with him and to discuss his potential defenses. Applicant was aware of at least one (1) of the substantive defenses available to him. He was also aware that he could obtain the services of an investigator, as he had made such a motion. Applicant was warned that he needed to cooperate with the efforts of his attorneys as they would not be appointed without end. (Trans. December 21, 2005, pp. 6-7).

Based on a full review of the record and direct observation of the Applicant, this Court found that the Applicant was attempting to delay and/or manipulate the proceedings in the hopes that the charges would somehow disappear. The transcript from the day of the plea revealed that the Applicant had numerous discussions with his stand-by counsel as well as with the Court. The Applicant was given the opportunity to ask questions and did in fact do so. He was also fully informed of his rights to remain silent, to confront his accusers, and of the nature

of the offenses with which he had been charged and the penalties of those charges. The Applicant was informed that he could face life in prison without parole on the charges. The Applicant was also informed of the offer for a negotiated plea and sentence. Further, the Applicant had the benefit of stand-by counsel, as approved in Gallop, who was present during the review of the videotape evidence the State would seek to introduce at trial. She offered some advice to him about that evidence and was prepared to discuss the rules of procedure and the trial proceedings with the Applicant.

The records revealed that the Applicant knew exactly why he was before the court, he knew why the Court required him to go forward, and that it was his decision to plead to the charges. PCR counsel argued that Gardner v. State, 351 S.C. 407, 570 S.E.2d 184 (2002) should be applied here. This case is specifically distinguishable from Gardner v. State. Gardner did not have counsel because he had stopped paying for his private attorney and was never given the opportunity to obtain new counsel. Here, Applicant was afforded numerous opportunities to have competent counsel represent him on these serious charges. His conduct demonstrated to the Court that he was only willing to work with an attorney he wanted.[3] The right to counsel does not mean that a defendant is entitled to counsel of his choice. See United States v. Basham, 561 F.3d 303 (4th Cir. 2009).

While there was no specific finding by the Court on the record addressing all of the pertinent factors, the motion hearing records contain sufficient information to show that the Applicant knowingly and intelligently waived his right to counsel, was appointed stand-by counsel, and entered into the plea on the charges freely and voluntarily with knowledge of all his constitutional rights and a waiver of those rights.

Further, on the record during a hearing to relieve one of the Applicant's attorneys, the Court noted its concern that the Applicant was attempting to delay or manipulate the proceedings. (Trans. December 21, 2005, pp. 6-7). In such situations, the court must be allowed to impose restraints. Therefore, this Court found that the Applicant's constitutional right to counsel was not violated, as the Court took steps to ensure that the Applicant would have reasonably effective assistance of counsel guaranteed by the appointment of stand-by counsel.

App. 263-67.

The PCR court concluded:

---

[3] Applicant's final counsel, Chris Hart, requested to be relieved claiming (amongst other reasons) a fear that presenting a defense for the Applicant would amount to malpractice. (Trans. February 27, 2006 pp. 4, 5). In addition, Attorney Hart's written motion dated February 6, 2006, was an exhibit to the PCR hearing. The motion recited Petitioner's proposition that Mr. Hart engage in unethical conduct.

7

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court (sic) to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

App. 267-68.

Petitioner timely appealed the denial of his PCR application to the South Carolina Supreme Court by way of a Petition for Writ of Certiorari. ECF No. 21-6. In his Writ of Certiorari, Petitioner argued that there was "not an adequate record below from which it can be concluded that the Petitioner lacked 'good cause' for his displeasure with each of his previous court appointed lawyers." ECF No. 21-6 at 10. Petitioner also argued that the lack of "any warning by the court of the risks involved in self-representation" amounted to a violation of the Petitioner's right to counsel. ECF No. 21-6 at 10-11. Certiorari was denied on May 12, 2011. ECF No. 21-9. The remittitur issued on May 30, 2011. ECF No. 21-10. This federal habeas petition followed on September 1, 2011.

 III. Discussion

 A. Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, quoted verbatim:

> **Ground one**: The Petitioner's right to the assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated when the trial court required the Petitioner to proceed pro se on all of his charges.
>
> **Supporting facts:** While his charges were pending, the Petitioner was represented by four attorneys: Jason Chehoski, LaNelle DuRant, Steven Hisker, and Christopher Hart. The first two attorneys worked for the Richland County Public Defender's Office, and Attorney Durant received the case after Attorney Chehoski left the Public Defender's Office. Attorney Durant was relieved as counsel on Petitioner's motion due to his

dissatisfaction with her representation and Attorney Chehoski[4] was appointed to represent the Petitioner. Attorney Chehoski[5] was relieved as counsel on a joint motion by the Petitioner and Attorney Chehoski[6] and Attorney Hart was appointed to represent the Petitioner. Attorney Hart was relieved as counsel on a joint motion by the Petitioner and Attorney Hart and the trial court refused the Petitioner's request to appoint a new attorney. The trial court then required the Petitioner to proceed pro se and appointed attorney Kana Johnson to serve as shadow counsel. The Petitioner then pleaded guilty to all of the charges against him.

Pet. ECF No. 1, at 6.

### B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

---

[4] Petitioner incorrectly referenced Attorney Chehoski's, instead of Attorney Hisker's, name.
[5] *See* Footnote 4.
[6] *See* Footnote 4.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

    C.    Habeas Corpus Standard of Review

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the

claim. *Id*. The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below. Here it is undisputed that Petitioner met exhaustion requirements. ECF No. 21 at 14-15.

    D.    Merits Analysis

Petitioner argues that his right to assistance of counsel was violated when the trial court required him to proceed pro se on all of his charges. ECF No. 1 at 6. Respondent argues that this claim is without merit because Petitioner failed to show that the PCR Court unreasonably applied United States Supreme Court precedent. ECF No. 21 at 19. Respondent also argues that Petitioner failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination given the evidence and the record before it. *Id.* In response to these arguments, Petitioner contends that the PCR Court's finding that Petitioner waived his right to counsel by his conduct is based on an unreasonable determination of the facts. ECF 30 at 9-10. Petitioner also contends that the PCR court misapplied *Faretta*[7] by failing to recognize that *Faretta* warnings are required in wavier-by-conduct cases. ECF No. 30 at 10-14.

The Sixth Amendment guarantees to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *United States v. Wade,* 388 U.S. 218, 224 (1967). A defendant may waive his right to counsel; however, a waiver of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment

---

[7] *Faretta v. California*, 422 U.S. 806 (1975).

11

of a known right or privilege. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *United States v. Singleton*, 107 F.3d 1091, 1095-96 (4th Cir. 1997). Whether a waiver of the right to counsel was knowing and intelligent depends, "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Singleton*, 107 F.3d at 1097 (citations and quotations omitted). Although no "precise procedure or litany for this evaluation" is required, the court must consider the record as a whole, including "the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation." *Id.* at 1097–98.

Petitioner's contention that the PCR court erred by failing to recognize that *Faretta* warnings are required in wavier by conduct cases is without merit. "While the *Faretta* Court recognized the absolute right of a defendant to represent himself as long as that decision is make knowingly, intelligently and voluntarily, it did not lay down detailed guidelines concerning what tests or lines of inquiry a trial judge is required to conduct to determine whether the defendant's decision was 'knowing and intelligent.'" *United States v. Gallop*, 838 F.2d. at 109. Instead, the trial judge is "merely required to determine the sufficiency of the waiver from the record as a whole rather than from a formalistic, deliberate, and searching inquiry." *Id.* at 110. In determining the sufficiency of Petitioner's waiver of counsel, the PCR court reviewed the facts and evidence presented at Petitioner's pre-trial hearings, at the plea hearing, and at the PCR hearing and concluded that Petitioner knowingly and intelligently waived his right to counsel, was appointed stand-by counsel, and entered a guilty plea on the charges freely and voluntarily with knowledge of all his constitutional rights and waiver of those rights. App. 267. Although the record does not contain specific findings by the court addressing the issues associated with

self-representation and waiving the right to counsel, federal law does not require that the court engage in a specific dialogue with a defendant. *See United States v. Gallop*, 838 F.2d at 110 (holding that a trial court's failure to advise a defendant of the dangers and disadvantages of self-representation does not automatically render the proceedings unconstitutional and, in the absence of specific inquiry, courts should review the record as a whole to determine the sufficiency of a defendant's waiver of counsel.) Upon a review of the record before the court, including the transcripts of the hearings before the state court on March 23, 2005, December 21, 2005, February 27, 2006, and March 6, 2006; the transcript of the PCR hearing; and the order denying PCR, this court finds that the PCR court's denial of relief on this claim was not contrary to, or an unreasonable application of, federal law. Petitioner is unable to establish that the PCR court unreasonably applied clearly established federal law or unreasonably applied the facts in light of the evidence presented at the state court proceedings, as required by 28 U.S.C. § 2254(d).

The court finds that the PCR court was not unreasonable in concluding that Petitioner's waiver of his right to counsel was knowing, intelligent, and voluntary. Accordingly, the court recommends that summary judgment be granted to Respondent.

IV. Conclusion

The undersigned has considered Petitioner's ground for habeas corpus relief and recommends that the Petition be dismissed. Accordingly, for the foregoing reasons, the court recommends that Respondent's Motion for Summary Judgment, ECF No. 20, be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

_Kaymani D. West_

June 21, 2012  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation.**